JUN 9 2026 PM1:56
FILED-USDC-CT-HARTFORD

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

David Germain,

      Plaintiff,                                              Civil Action No.: _____

v.

Experian Information Solutions, Inc.,

      Defendant.                                              **JURY TRIAL DEMANDED**

## I. COMPLAINT

David Germain is a Connecticut resident who spent years working, building a life, and trying to stay financially whole while the weight of too many obligations finally became too much to carry. In early 2025, he did what the bankruptcy laws exist for: he filed for Chapter 7 relief in the United States Bankruptcy Court for the District of Connecticut, and on June 18, 2025, that court entered a discharge. That discharge was supposed to be a fresh start. It was supposed to mean that the debts were resolved, that the accounts were closed chapters, and that Mr. Germain could begin again. What he got instead, when he pulled his Experian credit report on January 22, 2026,

was a document riddled with errors so numerous, so internally contradictory, and so damaging that the fresh start exists only on paper.

On January 22, 2026, Mr. Germain obtained his consumer file disclosure from Experian Information Solutions, Inc. What he found stopped him cold. Not one or two problems. Not isolated data gaps. Instead, account after account displayed data that was either missing entirely, mathematically impossible, or flatly contradicted by other entries on the same report. Payment histories were replaced by blank spaces or the notation 'ND' with no explanation. His own bankruptcy discharge, which a federal court entered on June 18, 2025, was reported as having occurred in February 2025 across every single discharged tradeline, four months before the actual discharge date. And six separate creditor accounts showed highest balance figures that exceeded the stated credit limits on those same accounts, a condition that cannot exist in any legitimate lending relationship.

The scale of what Experian withheld from its own disclosure is staggering. In excess of seventy-five data fields across Mr. Germain's file are either blank, marked 'ND' for no data, or represent information that Experian routinely furnishes to third-party creditors and lenders but systematically omits from its disclosures to the consumer. The Discover Card account, open for years and carrying derogatory notations, produced not a single month of payment history: Experian's disclosure states simply 'No payment history available to display.' Three American Honda Finance and multiple JPMorgan Chase accounts contained 'ND' designations spanning multiple consecutive months. Two American Express accounts carried no credit limit whatsoever. Every account bearing a bankruptcy discharge notation was stamped 'Status

Updated Feb 2025,' a date reflecting the filing, not the June 18, 2025 court-entered discharge. When the same report that Experian sends to creditors reflects the complete data while the consumer's own copy does not, that is not a technical oversight. It is a policy.

The Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq., exists precisely to prevent what happened here. Under 15 U.S.C. Section 1681g(a)(1), Experian must provide a consumer with all information in his file, clearly and accurately disclosed. Under Section 1681e(b), Experian must maintain reasonable procedures to ensure maximum possible accuracy. Under Section 1681i, when a consumer disputes an account, Experian must actually investigate, not simply transmit an automated verification code to the furnisher and accept whatever response it receives. The FTC Advisory Opinion to Katrina Darcy, issued June 30, 2000, placed every national consumer reporting agency, including Experian, on specific notice more than twenty-five years ago that omitting payment data from a consumer's own file while providing that same data to third parties violates Section 1681g(a)(1). And yet, on January 22, 2026, Mr. Germain's Experian disclosure contained the same categories of blank and missing fields that have been the subject of regulatory action, consumer litigation, and federal enforcement for decades.

Mr. Germain brings this action to vindicate his rights under the FCRA and to obtain the relief to which he is entitled: a complete and accurate file disclosure, compensation for the concrete harm Experian's failures have caused him, statutory and punitive damages for Experian's willful disregard of its legal obligations, and a judgment that makes clear that a fresh start must mean something more than a document full of errors delivered to the person who most needs accuracy.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. Section 1681p and 28 U.S.C. Section 1331, as this action arises under the Fair Credit Reporting Act, a federal statute.

2. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## III. PARTIES

3. Plaintiff David Germain is a natural person residing at 19 Riley Road, Apt. 6, Weatogue, Connecticut 06089. Plaintiff is a 'consumer' as defined by 15 U.S.C. Section 1681a(c).

4. Defendant Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian is a 'consumer reporting agency' as defined by 15 U.S.C. Section 1681a(f), which regularly engages in the practice of assembling, evaluating, and furnishing consumer credit information to third parties in interstate commerce. Defendant's registered agent in the State of Connecticut may be located through the Connecticut Secretary of State's corporate database.

## IV. FACTUAL ALLEGATIONS

**A. The Credit Report and Report Overview**

5. On January 22, 2026, Plaintiff obtained his consumer file disclosure from Defendant Experian Information Solutions, Inc. through AnnualCreditReport.com. The report bears confirmation number 0533-4628-38 and reflects twenty-six accounts, one public record, and thirty-eight hard inquiries.

6. The public record section of the report correctly reflects that Plaintiff filed a Chapter 7 bankruptcy petition on February 28, 2025, in the United States Bankruptcy Court for the District of Connecticut, Case Reference Number 2520194JJT, and that the court entered a discharge on June 18, 2025.

**B. Incomplete File Disclosure Under 15 U.S.C. Section 1681g(a)(1)**

7. Section 1681g(a)(1) requires Experian to clearly and accurately disclose to a consumer, upon request, all information in the consumer's file. This obligation encompasses complete payment histories, accurate balance and credit limit data, and all data fields that Experian maintains for each account. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) confirmed that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors constitutes a violation of Section 1681g(a)(1).

8. The January 22, 2026 file disclosure contained in excess of seventy-five blank, missing, or 'ND' (No Data) data fields across Plaintiff's accounts. The specific deficiencies are set forth below.

9. The American Express credit card account bearing account number ending in ...5853 (opened September 21, 2021) contains a blank Credit Limit field. No credit limit is disclosed anywhere in

the entry for this account, despite the account having carried a highest balance of $9,898.00. Without the credit limit, Plaintiff cannot determine whether the reported balance was within or in excess of any authorized limit, and third-party creditors reviewing this account cannot accurately assess Plaintiff's creditworthiness.

10. The American Express Line of Credit account bearing account number beginning with 612211 (opened April 26, 2022) contains a blank Credit Limit field. The highest balance on this account is reported as $140,824.00 with no corresponding credit limit disclosed, making it impossible to assess the account's utilization history.

11. The American Express credit card account ending in ...1933 (opened January 4, 2019) contains a payment history 'ND' designation for the month of May 2021. No payment data is disclosed for this month despite the account having been open and active during that period.

12. The American Honda Finance Auto Lease account bearing account number 41815XXXX (opened May 16, 2018) contains 'ND' designations for three consecutive months: April 2019, May 2019, and June 2019. No payment data is disclosed for any of these months. The appearance of identical 'ND' notations across three consecutive rows on the same account reflects a systemic data omission rather than any legitimate circumstance affecting this specific account.

13. The HiltonResortsCorp/HGV Real Estate account bearing account number 524474XXXX (opened September 7, 2022) contains an 'ND' designation for the month of April 2023. No payment data is disclosed for that month.

14. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXXX (opened July 26, 2022) contains 'ND' designations across multiple months in 2022 and 2023, including but not limited to the first column of January 2025, February 2025, and March 2025, as well as June 2024, July 2024, August 2024, September 2024, October 2024, November 2024,

and December 2024. In addition, an entire third-row column spanning January 2023 through December 2023 shows 'ND' for every month. The aggregate number of missing payment history cells for this single account exceeds fourteen.

15. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXX (opened April 19, 2023) contains 'ND' designations across October 2024, January 2025, and February 2025, as well as 'ND' entries spanning all months reflected in the 2023 row of the payment history grid.

16. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXX (opened April 22, 2023) contains 'ND' designations for January 2025, February 2025, March 2025, June 2024 through January 2025, and all months in the 2023 payment history row.

17. The Discover Card account bearing account number 601100XXXXXXXXXX (opened October 26, 2018) contains no payment history whatsoever. The disclosure states: 'No payment history available to display.' This account carried a highest balance of $5,782.00 against a stated credit limit of $5,000.00 and remained open from October 2018 through its Chapter 7 discharge in 2025. Experian has withheld every month of payment data for an account spanning approximately eighty months of history.

18. The identical pattern of blank payment histories, 'ND' designations, and missing credit limit fields appearing across every category of account on the same report, including credit cards, auto leases, and real estate accounts, confirms that these omissions result from Experian's deliberate, uniform data policy rather than any account-specific technical limitation. Experian routinely transmits complete payment history data to third-party creditors and lenders while systematically withholding those same fields from consumer file disclosures. This pattern is objectively

unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), and violates 15 U.S.C. Section 1681g(a)(1).

**C. Per Se Inaccuracies Under 15 U.S.C. Section 1681e(b)**

19. Section 1681e(b) requires Experian to follow reasonable procedures to assure maximum possible accuracy of the information it reports. An account that reflects a highest balance exceeding the stated credit limit represents a mathematical impossibility: a credit card or revolving account cannot carry a balance exceeding the credit limit without triggering an over-limit event, and Experian's reporting of such data without notation or correction is a per se inaccuracy. See Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

20. The JPMorgan Chase Bank Card account bearing account number 414720XXXXXXXXXX (opened December 3, 2022) reports a Credit Limit of $10,000.00 and a Highest Balance of $12,304.00. The highest balance exceeds the stated credit limit by $2,304.00. This is a per se inaccuracy.

21. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXX (opened July 26, 2022) reports a Credit Limit of $50,000.00 and a Highest Balance of $56,688.00. The highest balance exceeds the stated credit limit by $6,688.00. This is a per se inaccuracy.

22. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXX (opened April 19, 2023) reports a Credit Limit of $19,500.00 and a Highest Balance of $22,504.00. The highest balance exceeds the stated credit limit by $3,004.00. This is a per se inaccuracy.

23. The JPMorgan Chase Bank Card account bearing account number 424631XXXXXXXXXX (opened April 22, 2023) reports a Credit Limit of $10,000.00 and a Highest Balance of $10,717.00. The highest balance exceeds the stated credit limit by $717.00. This is a per se inaccuracy.

24. The JPMorgan Chase Bank Card account bearing account number 426684XXXXXXXXXX (opened August 21, 2020) reports a Credit Limit of $7,200.00 and a Highest Balance of $8,934.00. The highest balance exceeds the stated credit limit by $1,734.00. This is a per se inaccuracy.

25. The Discover Card account bearing account number 601100XXXXXXXXXX (opened October 26, 2018) reports a Credit Limit of $5,000.00 and a Highest Balance of $5,782.00. The highest balance exceeds the stated credit limit by $782.00. This is a per se inaccuracy.

26. The Capital One credit card account bearing account number 515676XXXXXXXXXX (opened April 8, 2025) reports a Credit Limit of $4,250.00 and a Highest Balance of $4,394.00. The highest balance exceeds the stated credit limit by $144.00. In addition, the Balance History for September 2025 reflects a balance of $4,394.00 against the then-applicable credit limit of $4,000.00, representing a balance in excess of the limit by $394.00 during that reporting period. This is a per se inaccuracy.

27. Experian's publication of highest balance figures exceeding stated credit limits on seven separate accounts without any notation, qualification, or correction demonstrates the absence of any automated data-integrity check comparing reported balance data against reported credit limit data before transmission. The failure to implement such a basic verification protocol is objectively unreasonable under Safeco, 551 U.S. at 69.

**D. Materially Misleading Bankruptcy Discharge Reporting**

28. Section 1681e(b) prohibits not only outright inaccuracies but also reporting that, while technically referencing a real event, is presented in a manner that is materially misleading to a prospective creditor or other consumer report user. See Gorman, 584 F.3d at 1154.

29. Plaintiff's consumer file disclosure contains a public records entry correctly reflecting that the Chapter 7 bankruptcy discharge was entered on June 18, 2025, by the United States Bankruptcy Court for the District of Connecticut.

30. Notwithstanding this accurate court record, every single account in the tradeline section bearing a Chapter 7 discharge notation reports 'Status Updated Feb 2025' as the date of the discharge status. This date corresponds to the filing date, not the discharge date. The discharge did not occur in February 2025. It occurred on June 18, 2025, more than four months later.

31. The accounts reporting an incorrect February 2025 discharge date include: American Express (account ending ...1933), American Express (account ending ...5253), American Express (account ending ...8343), American Express (account ending ...5853), American Express Line of Credit (account beginning 612211), Citibank N.A. (account 120206XXXXX), Citibank N.A. (account 687371XXXX), Discover Card (account 601100XXXXXXXXXXX), JPMorgan Chase Bank Card (account 414720XXXXXXXXXXX), JPMorgan Chase Bank Card (424631XXXXXXXXXXX, opened July 2022), JPMorgan Chase Bank Card (424631XXXXXXXXXXX, opened April 2023), JPMorgan Chase Bank Card (424631XXXXXXXXXXX, opened April 2023), and JPMorgan Chase Bank Card (account 426684XXXXXXXXXXX).

32. Experian's own public records section, sourced from LexisNexis Risk Data Management Inc., correctly identifies June 18, 2025 as the date the bankruptcy was resolved. Thus, the tradeline section and the public records section of the same Experian file contradict one another. A prospective creditor reviewing these tradelines would conclude that the accounts were discharged four months earlier than actually occurred, creating a materially misleading picture of the timeline of Plaintiff's bankruptcy proceedings.

33. The uniform application of the incorrect February 2025 discharge date across every affected tradeline, while the correct date appears in the public records section of the same document, demonstrates that Experian failed to cross-reference its own data sources before publishing the consumer's file disclosure. This is an internally contradictory report that no reasonable procedure would permit to be transmitted.

**E. Third-Party Dissemination and Standing**

34. The January 22, 2026 file disclosure reflects thirty-eight hard inquiries, each representing a transmission of Plaintiff's consumer report by Experian to a third-party creditor or lender in connection with an application or credit review initiated by Plaintiff. These transmissions constitute concrete disclosures of Plaintiff's consumer file to third parties within the meaning of TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

35. On October 28, 2025, Defendant transmitted Plaintiff's consumer report to Capital One, 15000 Capital One Drive, Richmond, Virginia 23238, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

36. On October 13, 2025, Defendant transmitted Plaintiff's consumer report to TD Bank, P.O. Box 71466, Philadelphia, Pennsylvania 19176, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

37. On September 27, 2025, Defendant transmitted Plaintiff's consumer report to Ally Financial, 3010 W. Agua Fria Freeway Suite 100, Phoenix, Arizona 85027, and separately to Ally Financial, 200 Renaissance Center, Detroit, Michigan 48243, as evidenced by the hard inquiries recorded on Plaintiff's file disclosure.

38. On September 27, 2025, Defendant transmitted Plaintiff's consumer report to NowCom/Westlake Financial, 4751 Wilshire Boulevard, Los Angeles, California 90010, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

39. On September 19, 2025, Defendant transmitted Plaintiff's consumer report to Consumer Portfolio Services, 19500 Jamboree Road, Irvine, California 92612, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

40. On September 18, 2025, Defendant transmitted Plaintiff's consumer report to Nissan Motor Acceptance Corporation, 8900 Freeport Parkway, Irving, Texas 75063; Global Lending Services, 3399 Peachtree Road NE Suite 400, Atlanta, Georgia 30326; Santander Consumer USA, 1601 Elm Street Suite 800, Dallas, Texas 75201; and LendBuzz Funding LLC, 100 Summer Street Suite 3150, Boston, Massachusetts 02110, as evidenced by the hard inquiries recorded on Plaintiff's file disclosure.

41. On September 13, 2025, Defendant transmitted Plaintiff's consumer report to 700/Acura of Avon, 57 Albany Turnpike, Canton, Connecticut 06019; CarMax, 225 Chastain Meadows Court NW, Kennesaw, Georgia 30144; Exeter Finance LLC/WCG, 2101 W. John Carpenter Freeway,

Irving, Texas 75063; and American Honda Finance, P.O. Box 168128, Irving, Texas 75016, as evidenced by the hard inquiries recorded on Plaintiff's file disclosure.

42. On July 17, 2025, Defendant transmitted Plaintiff's consumer report to Bank of America, P.O. Box 982238, El Paso, Texas 79998, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

43. On November 1, 2024, Defendant transmitted Plaintiff's consumer report to CBC/Meriden Automotive, 318 S. Broad Street, Meriden, Connecticut 06450, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

44. Each transmission described in paragraphs 38 through 47 constituted a dissemination to a third party of the consumer report containing the inaccuracies, incomplete disclosures, and materially misleading entries described herein. Each such transmission caused Plaintiff concrete, particularized harm by presenting prospective creditors and lenders with an incomplete, inaccurate, and misleading picture of Plaintiff's creditworthiness.

**F. Dispute History**

45. The Genesis Finance Auto Lease account bearing account number 231531XXXX (opened May 5, 2023) contains a 'Your Statement' notation reading 'ITEM IN DISPUTE BY CONSUMER.' The Reinvestigation Info section reflects that this account was updated from Experian's processing of a consumer dispute in August 2023.

46. The HiltonResortsCorp/HGV Real Estate account bearing account number 524474XXXX (opened September 7, 2022) contains a 'Your Statement' notation reading 'ITEM IN DISPUTE BY CONSUMER.' The account comment section reflects the statement 'Account previously in

dispute, investigation complete, reported by data furnisher,' which appeared in both the current and previous comment periods. The Reinvestigation Info section reflects that this account was updated from Experian's processing of a consumer dispute in August 2023.

47. The American Honda Finance Auto Lease account bearing account number 44612XXXX (opened September 17, 2020) contains an account comment reading 'Completed investigation of FCRA dispute, consumer disagrees,' confirming that a consumer dispute was lodged and processed, and that Plaintiff disputed the outcome of that reinvestigation.

48. The JPMorgan Chase Bank Card account bearing account number 414720XXXXXXXXXX (opened December 3, 2022) contains an account comment reflecting: 'Account previously in dispute, investigation complete, reported by data furnisher.' This notation confirms that Experian received a consumer dispute on this account and conducted or purported to conduct a reinvestigation, the result of which was a verification by the data furnisher.

## G. Systemic Reinvestigation Failure

49. The disputes on the accounts identified in paragraphs 49 through 52 above required Experian to conduct a reasonable reinvestigation pursuant to 15 U.S.C. Section 1681i(a)(1)(A). A reasonable reinvestigation requires more than forwarding an automated consumer dispute verification form (ACDV) to the furnisher and accepting whatever response the furnisher returns. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Ghazaryan v. Equifax Information Services, LLC, 740 F. App'x 157 (9th Cir. 2018).

50. Despite receiving and processing consumer disputes on the Genesis Finance, HiltonResortsCorp/HGV, American Honda Finance, and JPMorgan Chase accounts identified

above, Experian's January 22, 2026 disclosure continues to reflect information that Plaintiff disputes, including derogatory notations and account data that Plaintiff has contested. The notation 'consumer disagrees' on the American Honda Finance account demonstrates that Experian completed a reinvestigation and reached a result the consumer affirmatively rejected, without modifying or deleting the disputed information.

51. On information and belief, Experian's reinvestigation process consists exclusively of transmitting automated ACDV codes to data furnishers and accepting the furnisher's verification as conclusive, without independently reviewing the consumer's submitted documentation, cross-referencing its own internal file data, or applying any independent judgment as to the accuracy or verifiability of the disputed information.

52. Experian's continued reporting of disputed information to third parties, as evidenced by the thirty-eight hard inquiries appearing on the January 22, 2026 disclosure, without noting the disputed status of the accounts identified in Section F above, constitutes a failure to comply with Section 1681i(c).

## H. Willfulness

53. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed Experian and every other nationwide consumer reporting agency on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. Section 1681g(a)(1). Experian's continued operation of a disclosure policy that systematically omits payment data across every category of

account is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

54. The identical pattern of blank payment histories, 'ND' designations, missing credit limits, and absent Actual Payment Amount fields appearing across Plaintiff's credit card, auto lease, and real estate accounts on the same report confirms that these omissions result from Experian's deliberate, uniform data policy rather than isolated technical errors. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

55. Experian's failure to implement any automated cross-check comparing highest balance figures against stated credit limits before publishing a consumer report, despite the existence of seven per se inaccuracies of this type on a single report, is objectively unreasonable under Safeco and demonstrates either an intentional decision not to implement such a check or reckless disregard of Experian's legal obligation to assure maximum possible accuracy.

56. Experian's publication of an incorrect bankruptcy discharge date across every affected tradeline, notwithstanding the fact that the accurate discharge date appears in its own public records section sourced from its own data vendor, confirms that Experian fails to cross-reference its own internal data sources before publishing consumer file disclosures. The risk that this failure would result in materially misleading reporting is substantially greater than the risk arising from mere carelessness under Safeco, 551 U.S. at 69.

57. Experian's continued operation of practices materially identical to those described in a pending federal enforcement action filed by its primary regulator confirms willful disregard of known legal obligations under Safeco, 551 U.S. at 69. CFPB v. Experian Information Solutions, Inc., Case No. 8:25-cv-00024, C.D. Cal. Jan. 7, 2025 (pending, not adjudicated).

**I. Actual Damages**

58. As a direct and proximate result of Experian's violations of the Fair Credit Reporting Act, Plaintiff has suffered actual damages including: emotional distress and anxiety arising from the discovery that his consumer file contains dozens of errors, per se inaccuracies, and an incorrect bankruptcy discharge date; impaired creditworthiness and damaged credit profile; lost credit opportunities, including denial or adverse pricing on credit applications submitted to the creditors reflected in the hard inquiry section of the January 22, 2026 disclosure; inability to verify the accuracy of derogatory notations on his file due to Experian's withholding of the underlying payment data those notations purport to describe; and the expenditure of substantial time and resources investigating, documenting, and preparing to address the errors identified herein.

## V. CAUSES OF ACTION

### COUNT I

### Violation of 15 U.S.C. Section 1681g(a)(1)

### Failure to Provide Complete File Disclosure

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Section 1681g(a)(1) of the FCRA provides that every consumer reporting agency shall, upon request and in accordance with Section 1681h, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

61. Experian violated Section 1681g(a)(1) by delivering to Plaintiff, upon his January 22, 2026 request, a file disclosure containing in excess of seventy-five blank, missing, or 'ND' data fields across multiple accounts, including: the complete payment history for the Discover Card account bearing account number 601100XXXXXXXXXX; payment history cells designated 'ND' for the American Express credit card account ending ...1933 (May 2021), the American Honda Finance account 41815XXXX (April, May, and June 2019), the HiltonResortsCorp/HGV account 524474XXXX (April 2023), and multiple months on the JPMorgan Chase Bank Card accounts bearing account numbers 424631XXXXXXXXXX (opened July 2022), 424631XXXXXXXXXX (opened April 2023), 424631XXXXXXXXXX (opened April 2023), and 426684XXXXXXXXXX; and the Credit Limit fields for the American Express credit card account ending ...5853 and the American Express Line of Credit account beginning 612211.

62. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed Experian on specific notice more than twenty-five years ago that omitting data fields from a consumer's own file disclosure while furnishing that same data to third parties constitutes a violation of Section 1681g(a)(1). See Alexander v. Equifax Information Services, LLC, 2018 WL 3025939 (D. Nev. 2018); Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007).

63. Experian's violation of Section 1681g(a)(1) was willful within the meaning of 15 U.S.C. Section 1681n. Experian acted with reckless disregard of its obligations under the FCRA, as demonstrated by: the systemic and uniform pattern of omissions across every category of

account; specific notice of this obligation for over twenty-five years under the Darcy Opinion; and Experian's practice of transmitting complete data to third-party creditors while withholding the same data from the consumer. This willful conduct entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3).

64. In the alternative, to the extent Experian's violations are found to be negligent rather than willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT II

### Violation of 15 U.S.C. Section 1681e(b)

### Per Se Inaccuracy: Highest Balance Exceeding Stated Credit Limit

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Section 1681e(b) of the FCRA requires that whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

67. Experian violated Section 1681e(b) by reporting, without qualification or correction, highest balance figures that exceed the stated credit limits on seven separate accounts: (a) JPMorgan

Chase Bank Card account 414720XXXXXXXXXX: Highest Balance $12,304.00 vs. Credit Limit $10,000.00, excess of $2,304.00; (b) JPMorgan Chase Bank Card account 424631XXXXXXXXXX (opened July 2022): Highest Balance $56,688.00 vs. Credit Limit $50,000.00, excess of $6,688.00; (c) JPMorgan Chase Bank Card account 424631XXXXXXXXXX (opened April 2023): Highest Balance $22,504.00 vs. Credit Limit $19,500.00, excess of $3,004.00; (d) JPMorgan Chase Bank Card account 424631XXXXXXXXXX (opened April 2023): Highest Balance $10,717.00 vs. Credit Limit $10,000.00, excess of $717.00; (e) JPMorgan Chase Bank Card account 426684XXXXXXXXXX: Highest Balance $8,934.00 vs. Credit Limit $7,200.00, excess of $1,734.00; (f) Discover Card account 601100XXXXXXXXXX: Highest Balance $5,782.00 vs. Credit Limit $5,000.00, excess of $782.00; and (g) Capital One credit card account 515676XXXXXXXXXX (opened April 2025): Highest Balance $4,394.00 vs. Credit Limit $4,250.00, excess of $144.00.

68. A balance exceeding a stated credit limit is a per se inaccuracy: a revolving credit account cannot legitimately carry a balance exceeding the applicable credit limit without an over-limit event, and Experian's reporting of such data without notation or correction presents a materially inaccurate picture of these accounts to any creditor receiving the report. See Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

69. Experian's failure to implement any automated balance-versus-limit data integrity verification before publishing a consumer report is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), and constitutes willful disregard of Experian's Section 1681e(b) obligations. The presence of seven such per se inaccuracies on a single report demonstrates that this failure is systematic, not incidental.

70. Experian's willful violation of Section 1681e(b) entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3). In the alternative, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

**COUNT III**

**Violation of 15 U.S.C. Section 1681e(b)**

**Materially Misleading Bankruptcy Discharge Date Reporting**

71. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72. Section 1681e(b) prohibits not only outright factual inaccuracies but also reporting that, while nominally referencing a real event, is presented in a manner materially misleading to prospective users of the consumer report. See Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

73. Plaintiff's Chapter 7 bankruptcy discharge was entered by the United States Bankruptcy Court for the District of Connecticut on June 18, 2025. This accurate date is reflected in the public records section of Experian's January 22, 2026 disclosure, sourced from LexisNexis Risk Data Management Inc.

74. Notwithstanding the accurate discharge date in the public records section, every tradeline in Plaintiff's file bearing a 'Discharged through Bankruptcy Chapter 7' notation reports the status as 'Status Updated Feb 2025.' February 2025 is the date Plaintiff filed the bankruptcy petition, not the date the court entered the discharge. The discharge occurred more than four months after the petition filing.

75. The accounts incorrectly reporting February 2025 as the discharge status date include the American Express credit card account ending ...1933, the American Express credit card account ending ...5253, the American Express credit card account ending ...8343, the American Express credit card account ending ...5853, the American Express Line of Credit account beginning 612211, Citibank N.A. account 120206XXXXX, Citibank N.A. account 687371XXXX, the Discover Card account 601100XXXXXXXXXX, JPMorgan Chase Bank Card account 414720XXXXXXXXXXX, and JPMorgan Chase Bank Card accounts 424631XXXXXXXXXXX and 426684XXXXXXXXXX.

76. A prospective creditor reviewing these tradelines would understand the February 2025 date as reflecting a court-entered discharge on that date, when in fact the discharge did not occur until June 18, 2025. This creates a materially misleading picture of the timeline of Plaintiff's bankruptcy proceedings and the status of these accounts as of any given date between February and June 2025.

77. The fact that the correct discharge date appears in Experian's own public records section of the same report, while the incorrect filing date appears as the status update date across every affected tradeline, demonstrates an internal contradiction within the report that a reasonable data-verification procedure would have identified and corrected before publication.

78. Experian's willful violation of Section 1681e(b) through materially misleading discharge date reporting entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3). In the alternative, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT IV

### Violation of 15 U.S.C. Section 1681i(a)(1)(A)

### Failure to Conduct Reasonable Reinvestigation

79. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

80. Section 1681i(a)(1)(A) of the FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file.

81. Plaintiff disputed account information on the Genesis Finance Auto Lease account bearing account number 231531XXXX, the HiltonResortsCorp/HGV Real Estate account bearing

account number 524474XXXX, the American Honda Finance Auto Lease account bearing account number 44612XXXX, and the JPMorgan Chase Bank Card account bearing account number 414720XXXXXXXXXX. These disputes are confirmed by the active dispute notations and dispute-resolved notations appearing on Plaintiff's January 22, 2026 file disclosure.

82. A reasonable reinvestigation under Section 1681i(a)(1)(A) requires Experian to go beyond merely forwarding an automated consumer dispute verification form to the furnisher and accepting the furnisher's response as conclusive. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997). Experian must independently review the consumer's submitted documentation, cross-reference its internal file data, and apply independent judgment as to the accuracy and verifiability of the disputed information. Ghazaryan v. Equifax Information Services, LLC, 740 F. App'x 157 (9th Cir. 2018).

83. Experian failed to conduct a reasonable reinvestigation with respect to the disputed accounts identified herein. The account comment 'Completed investigation of FCRA dispute, consumer disagrees' on the American Honda Finance account 44612XXXX confirms that Experian completed a purported reinvestigation and reached a result the consumer affirmatively rejected, without modifying or deleting the disputed information. The continued presence of active dispute notations on the Genesis Finance and HiltonResortsCorp/HGV accounts further confirms that Experian's reinvestigation process has failed to resolve the disputed items.

84. On information and belief, Experian's reinvestigation process consists exclusively of transmitting automated ACDV codes to the data furnisher and accepting the furnisher's verification without independent review, which constitutes a rubber-stamp reinvestigation insufficient to satisfy Section 1681i(a)(1)(A). CFPB v. Experian Information Solutions, Inc., Case No. 8:25-cv-00024, C.D. Cal. Jan. 7, 2025 (pending, not adjudicated).

85. Experian's willful violation of Section 1681i(a)(1)(A) entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3). In the alternative, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT V

### Violation of 15 U.S.C. Section 1681i(a)(5)(A)

### Failure to Delete or Modify Unverifiable Information

86. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

87. Section 1681i(a)(5)(A) of the FCRA provides that if, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the file of the consumer, or modify that item of information as appropriate, based on the results of the reinvestigation.

88. Following reinvestigation of the disputed accounts identified in Count IV, Experian failed to delete or modify information that was disputed, including information on the Genesis Finance account bearing account number 231531XXXX and the HiltonResortsCorp/HGV account

bearing account number 524474XXXX, which continue to bear active dispute notations confirming that the reinvestigation process has not resulted in correction of the disputed entries.

89. Experian's continued publication of information that has been disputed and subjected to reinvestigation, without deletion or modification, entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3). In the alternative, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT VI

## Violation of 15 U.S.C. Section 1681i(c)

## Failure to Note Disputed Status in Subsequent Reports

90. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

91. Section 1681i(c) of the FCRA provides that whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary of the statement.

92. The January 22, 2026 file disclosure reflects thirty-eight hard inquiries, representing transmissions of Plaintiff's consumer report to third-party creditors and lenders during periods overlapping with the active dispute notations identified herein.

93. On information and belief, Experian transmitted consumer reports containing the disputed account information identified in Count IV to third-party creditors and lenders without clearly noting the disputed status of the Genesis Finance, HiltonResortsCorp/HGV, American Honda Finance, and JPMorgan Chase accounts, in violation of Section 1681i(c).

94. Experian's failure to note disputed status in subsequent consumer reports transmitted to third parties entitles Plaintiff to statutory damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A) in an amount between $100 and $1,000 per violation, punitive damages pursuant to Section 1681n(a)(2), and costs of this action pursuant to Section 1681n(a)(3). In the alternative, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Germain respectfully requests that this Court enter judgment in his favor and against Defendant Experian Information Solutions, Inc. as follows:

(a) Judgment in favor of Plaintiff and against Defendant on all counts;

(b) Actual damages sustained by Plaintiff as a result of Defendant's violations of the FCRA, pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages in the amount of not less than $100.00 and not more than $1,000.00 per willful violation, pursuant to 15 U.S.C. Section 1681n(a)(1)(A);

(d) Punitive damages for Defendant's willful violations of the FCRA, pursuant to 15 U.S.C. Section 1681n(a)(2);

(e) Costs of this action, pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Defendant to provide Plaintiff with a complete, accurate, and corrected file disclosure that includes all payment history data, correct credit limit information, the accurate Chapter 7 discharge date of June 18, 2025, and balance figures that are internally consistent with the stated credit limits for each account; and

(g) Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. Section 1681i following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

David Germain

Pro Se Plaintiff

19 Riley Rd. APT6

Weatogue, CT 06089-7973

provenwinnersrealty@gmail.com

Date: June 9, 2026

## EXHIBIT LIST

Exhibit A -- Full Experian Consumer File Disclosure, Report Number 0533-4628-38, dated January 22, 2026

Exhibit B -- FTC Advisory Opinion to Katrina Darcy, June 30, 2000

Exhibit C -- Itemized blank, ND, and missing field inventory by account